(Decided 11th July, 1882.)

THOMAS P. MILLER & Co. *vs.* ACALUS LOCKWOOD PALMER.

*Liability of the Owner of a Vessel for supplies and repairs—Insurance Agreement—Legal sufficiency of Evidence—Bills of Exchange—Prima facie evidence.*

In an action to recover money advanced by the plaintiffs to pay for necessary supplies and repairs, at the request of the master of a brig, while she was lying in a foreign port, the owner is liable for the amount so advanced, unless the plaintiffs by some act of theirs forfeited their right so to recover the same against the owner,—there being no clear proof that the supplies were unnecessary, or of collusion on the part of the plaintiffs.

If the advances of the plaintiffs were made under an agreement between them and the master and consignee of the vessel, that said master would give to the plaintiffs, as collateral security for said advances, drafts payable out of, and covered by, insurance on the freight expected to be earned by said vessel on her next voyage; and before the drafts were given to the plaintiffs, the consignee ascertained that he could not procure insurance on said freight, and a percentage on the amount for which said drafts were to be received as such collateral security was made and retained by the plaintiffs in consequence thereof, such reduction and detention imposed on the plaintiffs no obligation to procure insurance on said freight.

And an agreement that *if insurance could be obtained* for less than the percentage retained, the difference should be returned, imposed no positive obligation on the plaintiffs to insure, or make an effort to do so.

In order to determine the legal sufficiency of evidence to prove a fact, it is necessary to assume the truth of all the evidence offered on the point in issue, and add thereto every inference which may be fairly and legitimately drawn therefrom by the jury in the exercise of a reasonable intelligence.

The production of a first bill of exchange duly protested for non-acceptance, is sufficient *prima facie* evidence that neither the second nor third of the set were paid, and it is incumbent on the party alleging that any other of the set was accepted or paid, to produce proof of the fact.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*First Exception.*—Not passed on by the Court.

*Second Exception.*—At the trial the plaintiffs offered the three following prayers:

1. If the jury find from the evidence, that in January and February, 1878, the British Brig Magdala was in the port of Mobile, Alabama; that the plaintiffs, upon the application of J. W. Trafton, her master, in good faith advanced to him money for the purpose of paying necessary wages of the crew, necessary supplies to, and necessary repairs upon, said vessel, necessary bills for loading her, and necessary custom house charges in said port against her, and that the said master applied said money to said purposes; and further find, that the defendant was the owner of said brig, and a resident of St. John, in the Province of New Brunswick, and that said brig was registered in said Province, then the plaintiffs are entitled to recover in this suit the said advances.

2. That any private instructions given by the defendant to the master, and not communicated by him to the plain-

tiffs, do not affect their (the plaintiffs') right to recover in this suit.

3. If the jury believe that the advances of the plaintiffs were made under an agreement between them, the master and consignee, in Mobile, of said vessel, that said master would give to the plaintiffs, as collateral security for said advances, drafts payable out of, and covered by, insurance on the freight expected to be earned by said vessel on her next voyage; and further find, that before the drafts offered in evidence were given to the plaintiffs, the consignee had ascertained that he could not procure insurance on said freight, and that a percentage on the amount for which said drafts were to have been received as such collateral security, was made and retained by the plaintiffs, in consequence thereof, the said reduction and detention imposed on the plaintiffs no obligation to procure insurance on said freight.

And the defendant offered the twelve following prayers:

1. If the jury find from the evidence, that the money sued for in this case, was first advanced by the plaintiffs to the master of the ship, and one Goldthwaite, on their joint obligation, then the plaintiffs cannot recover.

2. If the jury find from the evidence, that the master had funds in hand necessary for all the purposes of his vessel; that there was telegraph communication between Mobile and St. John, and that the plaintiffs did not communicate with defendant before advancing said money, and that they knew the defendant lived in St. John, then the plaintiffs cannot recover.

3. If the jury find from the evidence, that the plaintiffs retained five per cent. from the proceeds of the drafts, to pay for insurance of so much of the freight of said brig, as was necessary to meet said drafts; that after retaining said money, they made no efforts to obtain insurance, although they had agreed to do so, and never notified the defendant that no insurance could be obtained by plain-

tiffs; and if they further find that said freight was not insured by the defendant, then plaintiffs cannot recover.

4. That the plaintiffs cannot recover unless they show that the notice of the dishonor of the drafts mentioned in the evidence, was sent to the master of said bark.

5. That the plaintiffs are not entitled to recover, unless notice of the dishonor of the drafts mentioned in evidence was sent to the defendant, and of this there is no evidence.

6. That the plaintiffs are not entitled to recover, unless they show that neither one of the three sets of drafts mentioned in the evidence were paid, and of this there is no evidence.

7. That the plaintiffs cannot recover, without producing in this case the three sets of drafts mentioned in the evidence, or accounting for the absence of them, and there is no evidence that one of the sets of said drafts has not been paid.

8. That the plaintiffs are not entitled to recover, without proving that the vessel was in need of supplies, repairs or necessaries, and of this there is no evidence.

9. That if the jury find from the evidence, that the drafts mentioned in the evidence do not contain the endorsement of the plaintiffs, but are endorsed by the master to a third party, and by said third party endorsed, then the presumption is, that the other sets of drafts were likewise so endorsed, and that they are outstanding in the hands of purchasers for value, or have been paid, and plaintiffs cannot recover.

10. If the jury find from the evidence, that the plaintiffs gave no notice to the defendant concerning the advances alleged to have been made by them to the master of defendant's brig at Mobile, until nearly a year after said advances were made; that in the meantime, defendant settled with said master, and at the time of such settlement, defendant knew nothing about said advances, and said advances did not enter into said settlement, then this

is evidence of *laches* on the part of plaintiffs, and the jury shall be at liberty to find that the liability of defendant, if any existed, has been waived.

11. That there is no evidence that the plaintiffs, after said drafts were given, made any efforts to insure said freight, or any part thereof, and there is no evidence that defendant was notified that no insurance could be obtained; and if the jury find, that five per cent. was retained by plaintiffs from the proceeds of said drafts to insure so much of the freight of the brig as was necessary to meet said drafts, and that defendant did not insure the freight, then plaintiffs cannot recover.

12. If the jury find from the evidence, that plaintiffs advanced the money mentioned in the evidence, and that the sum of five per cent. on the amount of the drafts mentioned in evidence, was retained by the plaintiffs out of the proceeds of said drafts, and that at the time and before said five per cent. was retained, it was agreed between the plaintiffs and said master and consignee, that if insurance could be obtained for less than five per cent. the difference would be returned to the master or owner of the brig, then the jury must find that said five per cent. was retained to pay for insurance; and if the jury further find, that plaintiffs thereafter made no efforts to insure, and did not give notice to the defendant of that fact, then plaintiffs became their own insurers and cannot recover.

The plaintiffs objected to the granting of the defendant's prayers, and by their counsel filed the following special exception to the defendant's third and twelfth prayers:

The plaintiffs except to the granting of the defendant's third prayer, especially because there is no evidence legally sufficient to support the hypothesis upon which the same is granted, and to the defendant's twelfth prayer upon the same ground, reserving their exceptions to them on other grounds.

And the Court (BROWN, J.,) granted the plaintiffs' first prayer in connection with those of the defendant granted, and also granted their second prayer, but rejected their third prayer; and granted the defendant's third and twelfth prayers and rejected all his other prayers.

The plaintiffs excepted, and the verdict and judgment being against them, they appealed.

The cause was argued before BARTOL, C. J., STONE, GRASON, MILLER, ALVEY, ROBINSON, IRVING and RITCHIE, J.

*Robert H. Smith,* and *John H. Thomas,* for the appellants.

*E. Calvin Williams,* filed a brief for the appellants.

*Sebastian Brown,* for the appellee.

STONE, J., delivered the opinion of the Court.

The appellants, Miller and Co., bankers and residents of Mobile, Alabama, advanced to Trafton, the master of the British Brig "Magdala," then lying in the port of Mobile, but which was owned and registered in New Brunswick, a sum of money for the purchase of necessary supplies to, and repairs upon, the brig, custom house and port charges, and other necessary disbursements, to be made at that port. These advances were made at the request of the master, and the consignee Goldthwaite, and this suit is brought to recover the amount so advanced, from the appellee, the owner of the brig.

There is little doubt as to the general rule of law, applicable to such advances, and it will be found laid down with great clearness, by the Chief Justice of the United States, in the case of *The Grapeshot,* 9 *Wallace,* 136, where he says:

"Where the claim of the material-man is against the owner only, and no privilege is given upon the vessel, no

Miller & Co. *vs.* Palmer.

necessity need be shown affirmatively. The master in the absence of known fraud, is fully authorized to represent the owners in all matters relating to the ship ; and it will always be presumed that supplies and repairs ordered by the master were reasonably fit and proper, unless there is clear proof to the contrary, and also proof of collusion by the material-man."

It is hardly necessary to refer to authority to show that if money is advanced to pay for the necessary supplies and repairs, that he who so advances it, stands in the place of, and has all the rights of, the material-man. But if any authority is needed, it will be found in the same case. The money to pay for these supplies, &c. having been advanced by the appellants, at the request of the master of the brig, while she was lying in a foreign port, it is clear that the owner is liable for the amount so advanced, unless the appellants have, by some act of theirs, forfeited their right to recover the same against the owner—there being no clear proof that the supplies were unnecessary, or of collusion on the part of the appellants.

The appellee insists that they have forfeited their right to recover against him, for several reasons assigned in the record, and which we are called upon to examine.

The appellants presented three prayers to the Court below, two of which were granted and the third was refused.

We will first examine the correctness of this refusal. Without giving the evidence in detail, it is sufficient to say, that there is evidence in the record *tending* to prove the facts set forth in this prayer. It is not for us to decide upon the weight of such evidence, as that is the exclusive province of the jury, but if the jury found the facts stated in that prayer to be true, then it followed as a legal and necessary conclusion, that the retention of the percentage did *not* impose on the appellants an obligation to procure insurance on the freight. The facts so set forth in the prayer expressly negative any such obligation, and the prayer should therefore have been granted.

The theory of the twelfth prayer of the appellee which was granted is, that if the jury should find, that before the percentage was retained, it was agreed, that *if insurance could be obtained* for less than the percentage retained, the difference should be returned, that then, the jury must find that the percentage was retained to pay for the insurance, and if thereafter the appellants made no effort to insure, they could not recover. It asserts in unqualified terms, that an agreement, *that if insurance could be obtained* for less than the percentage retained, the difference should be returned, imposed a positive obligation on the *appellants* to insure, or make an effort to do so. It was error to grant this prayer.

It does not follow legally or logically, that because the appellants may have agreed that the percentage retained by them might be applied to pay the insurance premium, that they thereby bound themselves to effect the insurance. Such an agreement is entirely consistent with the fact, that the master or consignee was to procure the insurance, and *not the appellants.*

The retention of a sum of money, *to pay for insurance,* certainly did not of itself superadd the obligation on the party holding the same, to effect the insurance.

If the amount of this percentage had been placed in the hands of some third party, a mere stakeholder, for the purpose of being applied to pay for insurance, if any could be obtained, it would hardly be contended, that such a deposit of itself imposed an obligation on the stakeholder to endeavor to effect the insurance. It can have no greater effect if left in the hands of a party in interest.

Nor does it necessarily follow that because it was agreed, that if an insurance could be obtained for less than the percentage retained, that the difference should be returned to the master, that this percentage was retained exclusively for the purpose of paying for the insurance. Such an agreement is entirely consistent with the fact,

Miller & Co. *vs.* Palmer.

that the percentage was retained because the bill was damaged, for want of insurance. The primary purpose of the retention, may have been on account of the damaged bill, although the appellants may have been very willing and agreed to refund it, upon the bill being made good by insurance. They may have been ready at any time, to give up their percentage, for a complete bill of exchange.

For these reasons, the appellee's twelfth prayer should not have been granted.

The third prayer of the appellee which was granted by the Court, and specially excepted to by the appellants for want of evidence to support it, presents a very important question in this case. That prayer rests upon the assumption that the appellants agreed to effect an insurance on the freight, or to endeavor so to do. The appellants insist that there is no evidence legally sufficient in the record to prove such agreement, and the question, whether there is, or is not, is for us now to determine.

In order to determine the legal sufficiency of the evidence to prove that fact, we must assume the truth of all the evidence offered by the appellee, on the point in issue, and add thereto, every inference, which may be fairly and legitimately drawn therefrom, by the jury in the exercise of a reasonable intelligence.

The only proof offered by the appellee, or to be found in the record, that the appellants agreed to obtain or make an effort to obtain an insurance upon the freight, will be found in the evidence of Goldthwaite, the consignee. His testimony was taken under a commission, and all that relates to the point in issue, will be found in his answers to the eighth and ninth interrogatories. These answers evidently relate to one and the same interview, and will be better understood by setting them forth in an inverse order. In answer to the ninth interrogatory, he said,

"I made efforts through the agent (Mr. C. A. Holt,) of the North American Insurance Company, of Philadel-

phia, Mr. Marshall J. Smith, of New Orleans, general insurance agent, and through the Atlantic Insurance Company, of New York, and when I found it impossible to effect the insurance upon the amount of the bills of exchange, I went with Captain Trafton to Messrs. T. P. Miller & Co., and stated these facts on the delivery of the bills, and thereupon Mr. Miller agreed to take the bills as incomplete for want of insurance, at a deduction of five per cent."

In answer to the eighth interrogatory, he said

"I was; T. P. Miller & Co. took the bills of exchange less five per cent. discount, remarking at the time, that if they, or I as consignee of the vessel, could get the insurance upon the draft, or upon the bills of exchange, effected at a lesser rate than the five per cent., they or I would return to the captain or owners the difference in the amount."

Read together, and all assumed to be true, is this evidence legally sufficient to prove an agreement on contract, on the part of the appellants to endeavor to procure an insurance? A contract may be defined to be "a deliberate engagement between competent parties upon a legal consideration to do, or abstain from doing, some act."

There is certainly no express agreement, promise or contract shown in this testimony to have been made by the appellants to insure, and we fail to see that any implied promise or agreement so to do, can be drawn therefrom by the exercise of a reasonable intelligence. A deliberate engagement to perform an act of great importance cannot be rationally deduced from a remark dropped in the course of a business transaction.

It is shown too in this testimony that this interview was not had with the appellants, until the consignee had found it impossible to insure, and that he stated that fact to the appellants.

The only reasonable inference that we think can be drawn from the remark so made, is that the appellants

were willing at any time to substitute a complete for an incomplete bill of exchange, by refunding the amount they had retained on account of the incomplete bill.

We therefore think there was no evidence legally sufficient to sustain the appellee's third prayer, and that it should not have been granted. This is exclusive of the letter of Trafton which requested the insurance to be made in Glasgow.

If the evidence of George E. Miller excepted to, and rejected, referred to the conversation which occurred at the time of making the agreement between Goldthwaite and one of the firm, and mentioned in the evidence of Goldthwaite, it was admissible; but as it is uncertain whether he means to say it was that conversation he refers to, the testimony was properly rejected.

As the case will be sent back for another trial, it may be proper to notice the sixth and seventh prayers of the appellee, which were properly rejected.

If there was no direct evidence in the record that these bills of exchange were received by the appellants as collateral security only, the law would presume such to be the fact in the absence of any express agreement or local usage to the contrary. The debt became due from the appellee to the appellants when they, at the request of the master, advanced the money to pay for the necessary supplies for the ship, and the taking of the bills of exchange from the master was not equivalent to its payment. Upon the non-payment of the bills of exchange, the appellants had a clear right to resort to their original cause of action. In order to show the non-payment of the bills of exchange the appellants produced in Court, and offered to surrender for cancellation, the first of the set of the bills of exchange, duly protested for non-acceptance. The production of the first of the set, duly protested for non-acceptance, is sufficient *prima facie* evidence that neither the second nor third of the set was paid, and it is incum-

bent on the appellee, if he alleges that any other of the set was accepted or paid, to produce the proof of the fact. Speaking of foreign bills of exchange, Parsons says :

"Payment, or cancelling of either copy of the set, is a discharge of all."

In the case of *Downs vs. Church*, 13 *Peters*, 205, the holder of the second of a set of the foreign bill of exchange protested for non-acceptance, sued the endorser, and it was objected at the trial that the other two of the set should be produced, as one of them might have been accepted and paid, and that the plaintiff could not recover without their production. But the Court (STORY delivering the opinion) held that it was a matter of defence to come from the other side to show that some other of the set had been accepted or paid, if such was the fact. He remarked, "The law will not presume that other bills of the set have been negotiated to other persons merely because they are not produced." So in this case the law does not presume that other bills of the set have been accepted or paid merely because they are not produced, but the production of the first of the set duly protested for non-acceptance, is *prima facie* evidence that the others, if ever presented at all, shared the same fate. *The Emily Souder*, 17 *Wallace*, 666.

From what has been said we think the Court below was right in granting the first and second prayers of the appellants, and that the third prayer of the appellants should have been granted, and the third and twelfth prayers of the appellee should have been refused.

*Judgment reversed, and*
*new trial awarded.*

(Decided 11th July, 1882.)